BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

MORGAN & MORGAN, P.C.
PETER SAFIRSTEIN
ROGER SACHAR
28 W. 44th Street, Suite 2001
New York, NY  10036
Tel: 212/564-1637
212/564-1807 (fax)
PSafirstein@MorganSecuritiesLaw.com
RSachar@MorganSecuritiesLaw.com

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FRAGOSO, JASON WILSON, SAMUEL SEIDENBERG, JANELLE ALBARELLO, and MICHAEL COFFEY, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE BEE FOODS, LLC, TRI-UNION SEAFOODS, LLC, and STARKIST CO.,<br><br>Defendants. | Case No.  **'15 CV 2072 DMS WVG**<br><br>**CLASS ACTION**<br><br>CLASS ACTION COMPLAINT<br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

Case No.

CLASS ACTION COMPLAINT

00090125

BLOOD HURST & O'REARDON, LLP

## CLASS ACTION COMPLAINT

Plaintiffs, Robert Fragoso, Jason Wilson, Samuel Seidenberg, Janelle Albarello, and Michael Coffey, by and through their attorneys, bring this Class Action Complaint ("Complaint") for indirect purchasers of packaged seafood products ("PSPs") against Bumble Bee Foods, LLC, Tri-Union Seafoods, LLC, and StarKist Co. (collectively, "Defendants"). These Defendants are the three largest domestic manufacturers of PSPs, and conspired to, and did, fix, raise, maintain, and/or stabilize prices for PSPs in contravention of federal and state law beginning in the summer of 2011, and continuing to the present. Plaintiffs seek redress for themselves and those similarly situated.

## NATURE OF THE ACTION

1.      This putative class action alleges that Defendants agreed, combined, and/or conspired among themselves to raise, inflate, maintain, and/or stabilize the price of PSPs from at least July 2011 to the present. Because Defendants are horizontal competitors, their conspiracy is a *per se* violation of Section 1 of the Sherman Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and violates the applicable state laws referenced herein.

## JURISDICTION AND VENUE

2.      Plaintiffs bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain equitable and injunctive relief for violations of Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims that arise under federal law and under 28 U.S.C. § 1337 for federal antitrust claims in particular. Plaintiffs also assert claims for damages, to seek restitution, and secure other relief, under state antitrust and other consumer protection laws.

3.      This Court additionally has subject matter jurisdiction over these state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

00090125

1    4.    This Court further has subject matter jurisdiction over the state law

2  claims by virtue of the Class Action Fairness Act of 2005 ("CAFA"), which

3  amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal

4  jurisdiction over class actions where, "any member of a class of Plaintiffs are

5  citizens of states different from any Defendant and the aggregated amount in

6  controversy exceeds $5,000,000, exclusive of interest and costs." The $5 million

7  amount-in-controversy and diverse-citizenship requirements of CAFA are

8  satisfied in this case.

9    5.    Under 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C. § 1391(b), (c) and

10  (d), this District has venue over the action, for Defendants resided, transacted

11  business, were found, and/or had agents in this District, and this District was the

12  situs of a substantial portion of the affected interstate trade and commerce

13  discussed herein during the Class Period.

14    6.    Each Defendant is subject to personal jurisdiction before this Court

15  because, among other reasons, each of them (a) transacted business, (b) sold

16  and/or distributed PSPs, (c) maintained substantial contacts, and/or (d) engaged

17  in an illegal and anticompetitive concerted action with respect to PSPs

18  throughout the United States and in this District in particular. The jointly agreed

19  upon scheme had the intended effect of injuring persons residing in, located in,

20  or doing business throughout the United States, including in this District. By

21  artificially establishing supra-competitive prices, the scheme restrained trade

22  unreasonably and negatively affected the market for PSPs, harming persons

23  throughout the United States and this District who purchased PSPs for personal

24  use and not for resale, including Plaintiffs and members of the Classes.

25  **INTERSTATE TRADE AND COMMERCE**

26    7.    Defendants' activities, as described herein, were within the flow of

27  and had a substantial effect on, the interstate commerce of the United States,

28  including in this District, as Defendants intended.

BLOOD HURST & O'REARDON, LLP

00090125

BLOOD HURST & O'REARDON, LLP

8.      Defendants produced and sold PSPs in an uninterrupted and continuous flow of interstate commerce among the United States and its territories. Defendants' anticompetitive scheme consequently inflicted a direct, substantial, and reasonably foreseeable effect on interstate commerce.

## **PARTIES AND OTHER ACTORS**

9.      Plaintiff Robert Fragoso is a current resident of Arizona. During the Class Period, Plaintiff Fragoso indirectly purchased PSPs in Arizona for his own use and not for resale from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

10.      Plaintiff Jason Wilson is a current resident of Michigan. During the Class Period, Plaintiff Wilson indirectly purchased PSPs in Michigan for his own use and not for resale from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

11.      Plaintiff Samuel Seidenberg is a current resident of New York. During the Class Period, Plaintiff Wilson indirectly purchased PSPs in New York for his own use and not for resale from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

12.      Plaintiff Janelle Albarello is a current resident of Hawaii. During the Class Period, Plaintiff Albarello indirectly purchased PSPs in Hawaii for her own use and not for resale from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

13.      Plaintiff Michael Coffey is a current resident of Florida. During the Class Period, Plaintiff Wilson indirectly purchased PSPs in California and Florida for his own use and not for resale from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

14. Defendant Bumble Bees Foods, LLC ("Bumble Bee") is a domestic corporation with its principal place of business located at 280 10th Avenue, San Diego, CA 92101. Bumble Bee produces and sells PSPs throughout the United States, (including in this District), its territories and the District of Columbia. Bumble Bee is privately owned by Lion Capital, a United Kingdom-based company.

15. Defendant Tri-Union Seafoods, LLC ("Tri-Union Seafoods") is a domestic corporation with its principal place of business located at 9330 Scranton Road, Suite 500, San Diego CA 92121. Tri-Union Seafoods produces and sells PSPs throughout the United States (including this District), its territories, and the District of Columbia. Tri-Union Seafoods markets its product under the brand name Chicken of the Sea (hereinafter referred to as "CoS"). CoS is owned by Thai Union Frozen Product ("TUF"), a Thailand-based company.

16. Defendant StarKist Co. ("StarKist") is a domestic corporation with its headquarters at 225 North Shore Drive, Suite 400, Pittsburgh PA 15212. StarKist produces and sells PSPs throughout the United States, (including in this District), its territories and the District of Columbia. StarKist is privately owned by Dongwon Enterprises, a South Korean-based company.

## CO-CONSPIRATORS AND AGENTS

17. The acts taken by Defendants, as alleged herein, were authorized, ordered, and condoned by their respective parent companies and authorized ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control or transaction of their business affairs.

18. Various other persons, corporation, or firms not named herein as Defendants have participated in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

BLOOD HURST & O'REARDON, LLP

Case No.
CLASS ACTION COMPLAINT
00090125

BLOOD HURST & O'REARDON, LLP

**FACTUAL ALLEGATIONS**

19.   PSPs are a multi-billion dollar industry. According to a Bumble Bee presentation, total United State retail sales of shelf-stable seafood were $2.346 billion in 2011. Bumble Bee's reported estimated that canned tuna represented 73% of the sales of shelf-stable seafood, comprising $1.719 billion in 2011.

20.   Canned tuna is typically comprised of skipjack tuna, as opposed to more expansive tuna types, such as Toro or Bluefin.

21.   Bumble Bee, CoS and StarKist are the three largest domestic manufacturers of PSPs, and the industry exhibits high degrees of concentration. According to the *Washington Post*, Chicken of the Sea and Bumble Bee account for approximately 38% of U.S. canned tuna sales, while StarKist comprises 36%.[1]

22.   Since a peak in the mid-1980s, sales of PSPs, including canned tuna, have been steadily declining. This is attributable to a number of factors, ranging from fears of dolphins being caught in tuna nets, to fears of mercury poisoning, to consumer preferences for fresh caught seafood. A *Washington Post* article graphically represented the decline in domestic consumer consumption:[2]

///

///

///

///

---

[1]   Roberto A. Ferdman, *The world's biggest canned tuna company is about to get a lot bigger*, Wash. Post, Dec. 19, 2014, http://www.washingtonpost.com/news/wonkblog/wp/2014/12/19/the-worlds-biggest-canned-tuna-company-is-about-to-get-a-lot-bigger/

[2]   Roberto A. Ferdman, *How America fell out of love with canned tuna*, Wash. Post, Aug. 18, 2014, http://www.washingtonpost.com/news/wonkblog/wp/2014/08/18/how-america-fell-out-of-love-with-canned-tuna/

Case No.
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11

BLOOD HURST & O'REARDON, LLP



12   23.   Yet, while the amount of PSPs consumed has declined, the price of

13   PSPs has increased steadily. According to the same *Washington Post* article:

14
15
16
17
18
19
20
21
22
23
24



25   24.   Normally, one would expect a decline in consumption of canned

26   tuna and PSPs to trigger a reduction in prices for PSPs. However, because the

27   Defendants controlled the PSP market, and conspired with one another to restrict

28

00090125

BLOOD HURST & O'REARDON, LLP

capacity, allocate customers, and to fix the price of PSPs, PSPs continued to be priced at artificially high levels throughout the Class Period.

25.    Between 2005 and the beginning of 2015, the average price for canned tuna has increased roughly 50%, despite the decline in demand.

26.    The increase in prices is not attributable to increased raw material costs. Indeed, according to the United Nations Food & Agriculture Organization's May 2015 "Food Outlook" biannual report, in 2014, that basic "tuna prices declined significantly due to excess supply, with frozen skipjack prices hitting a 6-year low." Despite the decline in the price of tuna supplies, canned tuna prices have increased.

27.    Defendant TUF, as a public traded company, has explained its ability to increase prices despite declining demand. In its 2013 Annual Report, TUF informed investors that "our branded tuna business showed resilient growth from 2012 thanks to the price adjustments in Europe and *more rational market competition in the US.*" A year later, TUF's Annual Report noted that:

> *Thanks to reduced price competition (absence of cut throat pricing)* and generally lower fish costs, our own tuna brands marked a great year of increased profitability. Despite minimal sales growth in the US, competitive inventory cost and reasonable market conditions helped lift the margin of our US brand.

28.    Repeatedly, TUF's 2014 annual report emphasized that growth of its canned tuna division was dependent upon the continuation of "sensible market competition," and "[r]easonable US canned tuna competition." These types of descriptions are the hallmarks of collusion among allies; not the healthy robust competition of rivals.

29.    There exist numerous opportunities for collusion among the Defendants. Each of the Defendants is a member of the National Fisheries Institute's Tuna council, and each of the Defendants co-operated in the "Tuna the Wonderfish" campaign in 2011 and 2012.

30.     Bumble Bee and CoS also cooperate through co-packing agreements. On the East Coast, the rivals co-pack canned tuna at a plant in Georgia owned by CoS, while on the West Coast the rivals co-pack tuna at a plant owned by Bumble Bee in California.

31.     Further, in 2014, TUF announced that it was seeking to acquire Bumble Bee, to complement its Chicken of the Sea brand. The merger appears to have been called off, but the two firms likely shared pricing and other collusive information.

32.     In July 2015, both TUF and Bumble Bee announced that they had received subpoenas from the United States Department of Justice ("DOJ") regarding potential antitrust violations in the PSP sector.

## ANTITRUST IMPACT AND INJURY

33.     Defendants' unlawful agreement and conspiracy has had the following effects, among others:

a.     Restraining or eliminating price competition with respect to PSPs;

b.     Raising, fixing, stabilizing and maintaining prices for PSPs at artificially inflated levels; and

c.     Depriving indirect purchasers of PSPs of the benefits of the interplay of free and unrestrained competitive forces.

34.     During the Class Period, Plaintiffs and the members of the Class paid supra-competitive prices for PSPs.

35.     Because of the alleged violations of the antitrust laws, Plaintiffs and the members of the Class have sustained injury to their businesses or property, having paid higher prices for PSPs than they would have paid absent the Defendants' illegal contract, combination or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

CLASS ACTION COMPLAINT

00090125

BLOOD HURST & O'REARDON, LLP

## CLASS ALLEGATIONS

36.     Plaintiffs bring this action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class of plaintiffs (the "Nationwide Class" or "Class") consisting of:

> All persons or entities currently residing in the United States who, from July 2011 to the present, (the "Class Period") indirectly purchased packaged seafood products within the United States, its territories and the District of Columbia packaged by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal entities, any judicial officer presiding over this action, and the members of his or her own immediate family and judicial staff, and any juror assigned to this action.

37.     Plaintiffs also bring this action on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following classes (collectively, the "Indirect Purchaser State Subclasses" of "State Subclasses")[3]:

> a.     **Arizona:** All persons and entities who, from July 2011 through present, as residents of Arizona, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Arizona Indirect Purchaser Subclass").

> b.     **California:** All persons and entities who, from July 2011 through present, as residents of California, indirectly purchased PSPs

---

[3]     The National Class and the State Subclass shall be referred to collectively as the "Classes."

BLOOD HURST & O'REARDON, LLP

00090125

manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "California Indirect Purchaser Subclass").

c.    **District of Columbia:** All persons and entities who, from July 2011 through present, as residents of the District of Columbia, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "District of Columbia Indirect Purchaser Subclass").

d.    **Florida:** All persons and entities who, from July 2011 through present, as residents of Florida, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Florida Indirect Purchaser Subclass").

e.    **Hawaii:** All persons and entities who, from July 2011 through present, as residents of Hawaii, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-

conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Hawaii Indirect Purchaser Subclass").

f. **Illinois:** All persons and entities who, from July 2011 through present, as residents of Illinois, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Illinois Indirect Purchaser Subclass").

g. **Iowa:** All persons and entities who, from July 2011 through present, as residents of Iowa, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Iowa Indirect Purchaser Subclass").

h. **Kansas:** All persons and entities who, from July 2011 through present, as residents of Kansas, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Kansas Indirect Purchaser Subclass").

Case No.
CLASS ACTION COMPLAINT

i.      **Maine:** All persons and entities who, from July 2011 through present, as residents of Maine, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Maine Indirect Purchaser Subclass").

j.      **Massachusetts:** All persons and entities who, from July 2011 through present, as residents of Massachusetts, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Massachusetts Indirect Purchaser Subclass").

k.      **Michigan:** All persons and entities who, from July 2011 through present, as residents of Michigan, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Michigan Indirect Purchaser Subclass").

l.      **Minnesota:** All persons and entities who, from July 2011 through present, as residents of Minnesota, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the

BLOOD HURST & O'REARDON, LLP

00090125

legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Minnesota Indirect Purchaser Subclass").

m.    **Mississippi:** All persons and entities who, from July 2011 through present, as residents of Mississippi purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Mississippi Indirect Purchaser Subclass").

n.    **Nebraska:** All persons and entities who, from July 2011 through present, as residents of Nebraska, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nebraska Indirect Purchaser Subclass").

o.    **Nevada:** All persons and entities who, from July 2011 through present, as residents of Nevada, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nevada Indirect Purchaser Subclass").

p.   **New Hampshire:** All persons and entities who, from July 2011 through present, as residents of New Hampshire, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New Hampshire Indirect Purchaser Subclass").

q.   **New Mexico:** All persons and entities who, from July 2011 through present, as residents of New Mexico, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New Mexico Indirect Purchaser Subclass").

r.   **New York:** All persons and entities who, from July 2011 through present, as residents of New York, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New York Indirect Purchaser Subclass").

s.   **North Carolina:** All persons and entities who, from July 2011 through present, as residents of North Carolina, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the

BLOOD HURST & O'REARDON, LLP

00090125

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "North Carolina Indirect Purchaser Subclass").

t.      **North Dakota:** All persons and entities who, from July 2011 through present, as residents of North Dakota, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "North Dakota Indirect Purchaser Subclass").

u.      **Puerto Rico:** All persons and entities who, from July 2011 through present, as residents of Puerto Rico, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Puerto Rico Indirect Purchaser Subclass").

v.      **South Dakota:** All persons and entities who, from July 2011 through present, as residents of South Dakota, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "South Dakota Indirect Purchaser Subclass").

00090125

BLOOD HURST & O'REARDON, LLP

w.      **Tennessee:** All persons and entities who, from July 2011 through present, as residents of Tennessee, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Tennessee Indirect Purchaser Subclass").

x.      **Utah:** All persons and entities who, from July 2011 through present, as residents of Utah, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Utah Indirect Purchaser Subclass").

y.      **Vermont:** All persons and entities who, from July 2011 through present, as residents of Vermont, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Vermont Indirect Purchaser Subclass").

z.      **West Virginia:** All persons and entities who, from July 2011 through present, as residents of West Virginia, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the

00090125

legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "West Virginia Indirect Purchaser Subclass").

aa.    **Wisconsin:** All persons and entities who, from July 2011 through present, as residents of Wisconsin, indirectly purchased PSPs manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Wisconsin Indirect Purchaser Subclass").

38.    Subject to additional information obtained through further investigation and discovery, the foregoing Class definitions may be expanded or narrowed by amendment or amended complaint.

39.    **Numerosity:** For each of the Classes, membership is so numerous that joinder of all members is impracticable. On information and belief, each class consists of thousands of individuals and entities who purchased PSPs packaged by Defendants during the Class Period, and the membership of the Classes extends into the hundreds of thousands.

40.    **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class and State Subclass because each Plaintiff and all Class and State Subclass members indirectly purchased during the Class Period PSPs packaged by one or more of the Defendants and thus each were damaged by the actions of Defendants, which caused them to pay artificially inflated prices for PSPs.

///

///

BLOOD HURST & O'REARDON, LLP

00090125

41.   **Adequacy of Plaintiffs and their Counsel:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and State Subclass members. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other Class and State Subclass members. Plaintiffs are represented by counsel experienced and respected in the prosecution of class action and antitrust litigation.

42.   **Common Questions:** This case presents many common questions of law and fact that will predominate over any questions that may affect individual members of the Class and State Subclasses, such as:

a.   Whether the Defendants formed and operated an agreement, combination, and/or conspiracy to raise, fix, maintain and/or stabilize the prices charged for PSPs sold in the United States;

b.   The operative time period and extent of these arrangements;

c.   Whether each Defendant was a participant in any such agreement, combination, or conspiracy;

d.   Whether the actions of Defendants in so doing violated Section 1 of the Sherman Act and the applicable state laws, as discussed below;

e.   Whether the actions of the Defendants violated the various state laws asserted below;

f.   Whether the Defendants' conduct had the effect of artificially fixing, stabilizing, maintaining and/or inflating the price of PSPs sold in the United States during the Class Period;

g.   Whether the conduct of the Defendants caused injury to business or property of Plaintiffs and the members of the Classes;

h.   The appropriate nature of Classwide equitable relief; and

18   Case No.

CLASS ACTION COMPLAINT

i.    The measure and amount of damages incurred by the State Subclasses.

43.    **Superiority:** A class action is superior to the other available means of fair and efficient adjudication of the claims of Plaintiffs and the members of the Classes. The injury suffered by each individual member of the Classes is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' misconduct. It would be virtually impossible for individual members of the Classes to redress effectively the wrongs done to them. Even if members of the Classes could afford such individual litigation, the court system could not. Individual litigation would pose a likelihood of inconsistent and contradictory judgments. Further, individualized litigation would increase the delay and expense to all parties, and to the court system, due to the complex legal and factual issues presented by this dispute. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. This action presents no difficulties in management that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Vioaltion of Section One of the Sherman Act

### (On behalf of Plaintiffs and the Nationwide Class for Injunctive Relief)

44.    Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint as if set forth in full at this point.

45.    Beginning at least as early as 2000 and continuing through the present, Defendants have engaged in a continuing agreement or conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of PSPs in the United States.

BLOOD HURST & O'REARDON, LLP

46.     Defendants' conduct featured anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain, or stabilize the price of PSPs sold in the United States. These activities included:

a.      participation in meetings, conversations, and communications to discuss the price and pricing terms for the sale of PSPs in the United States;

b.      agreement during those meetings, conversations, and communications to charge prices at specified levels and otherwise to fix, raise, maintain, or stabilize prices of PSPs sold in the United States; and

c.      taking numerous steps, as set forth herein, to implement and maintain the conspiracy, including monitoring compliance of fellow conspirators.

47.     Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements, combinations, and/or conspiracies described in this Complaint.

48.     Defendants' contract, combination or conspiracy constitutes an unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and applicable state laws discussed herein.

49.     The alleged contract, combination or conspiracy among competitors constitutes a *per se* violation of the federal antitrust laws.

50.     As a result of Defendants' unlawful conduct, Plaintiffs and the other Class members have been injured in their business and property because they have paid more for PSPs packaged by Defendants (or their subsidiaries or controlled affiliates) than they would have paid absent collusion.

51.     Defendants' unlawful conduct has had at least the following effects:

a.      Restraining or eliminating price competition with respect to PSPs;

Case No.
CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00090125

BLOOD HURST & O'REARDON, LLP

1

2

3

4

  b. Raising, fixing, stabilizing and maintaining prices for PSPs at artificially inflated levels; and

  c. Depriving indirect purchasers of PSPs of the benefits of the interplay of free and unrestrained competitive forces.

52. PSPs are identifiable, discrete physical products that remain unchanged from the moment they are packaged until they reach the supermarket shelves. As a result, PSPs follow a traceable physical chain of distribution from the Defendants to the Plaintiffs and the members of the Classes, and any costs attributable to PSPs are likewise traceable through the chain of distribution to Plaintiffs and members of the Classes.

53. Defendants' antitrust violations are continuing and will continue unless enjoined by this Court.

54. Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Class are entitled to a final and permanent injunction against Defendants, preventing and restraining the violations alleged herein.

55. Pursuant to the Clayton Act, Plaintiffs and the Class are entitled to the costs of prosecuting this suit, including reasonable attorneys' fees and expert fees.

56. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, each Plaintiff demands a jury trial as to all issues triable by a jury.

## SECOND CLAIM FOR RELIEF

### Violations of State Antitrust and Restraint of Trade Laws

### (On Behalf of State Subclasses)

57. Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint as if set forth in full at this point.

58. By reason of the foregoing, the Defendants have entered into a trust, contract, combination, understanding, and agreement in restraint of trade in

BLOOD HURST & O'REARDON, LLP

violation of Arizona Revised Stat. § 44-1401, *et seq.*;[4] California Bus. & Prof. Code § 16701, *et seq.;* District of Columbia Code Ann. § 28-4501, *et seq.*; Florida Stat. § 501.201, *et seq*; Hawaii Code, H.R.S. § 480-4, *et seq.*; 740 Illinois Comp. Stat. § 10.1, *et seq.*; Iowa Code § 553.1, *et seq.*; Kansas Stat. Ann. § 50-101, *et seq.;* Maine Rev. Stat. Ann. tit. 10, § 1101, *et seq.*; Massachusetts Gen. Laws ch. 93A, § 1, *et seq.*; Michigan Comp. Laws. Ann. § 445.771, *et seq.*; Minnesota Stat. § 325D.49, *et seq.*; Mississippi Code Ann. § 75-21-1, *et seq.*; Nebraska Rev. Stat. §§ 59-801, *et seq.* and § 59-1601, *et seq.*; Nevada Rev. Stat. Ann. § 598A, *et seq.*;[5] New Hampshire Revised Stat. Ann. § 356: I, *et seq.*; New Mexico Stat. Ann. § 57-1-1, *et seq.*; New York Gen. Bus. Law § 340, *et seq.*; North Carolina Gen. Stat. § 75-1, *et seq.*; North Dakota Cent. Code § 51-08.1-01, *et seq.*; Puerto Rico Laws Ann. tit. 10, § 257, *et seq.*; South Dakota Codified Laws § 37-1-3.1, *et seq.*; Tennessee Code Ann. § 47-25-101, *et seq.*; Utah Code Ann. § 76-10-911, *et seq.*;[6] Vermont Stat. Ann. Title 9, § 2451, *et seq*.; West Virginia Code § 47-18-1, *et seq.*; and Wisconsin Stat. § 133.01, *et seq.*

59.     Members of the State Subclasses for the states listed above paid supra-competitive, artificially inflated prices for PSPs. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and the members of the State Subclasses have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid absent the Defendants' unlawful conduct.

60.     As a result of the Defendants' violations of the statutes set forth above, Plaintiffs and other members of the State Subclasses seek damages and

---

[4]     In compliance with Arizona's Antitrust Act, Ariz. Rev. Stat. § 44-1415, Plaintiffs notified the Arizona Attorney General of the existence of this action.

[5]     In compliance with the Nevada Unfair Trade Practices Act, Nev. Rev. Stat. Ann. § 589A.210(3), Plaintiff provided the Nevada Attorney General with a copy of this Complaint.

[6]     In compliance with Utah Code Ann. § 76-10-919(9), Plaintiff notified the Utah Attorney General of the existence of this action and provided a copy of the Complaint.

costs of suit, including reasonable attorneys' fees, and all other forms of relief available under the state antitrust statues listed above.

## DEMAND FOR JURY TRIAL

61.   Pursuant to Federal Rule of Civil Procedure 38(b), each Plaintiff demands a trial by jury of all claims asserted in this Complaint so triable.

## DEMAND FOR RELIEF

62.   Wherefore, Plaintiffs demand judgment against Defendants as follows;

a.   Declaring this action to be a proper class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class and State Subclasses as defined herein;

b.   That the contract, combination, or conspiracy, and the acts done in furtherance thereof by Defendants be judged to have violated Section 1 of the Sherman Act, 15 U.S.C. § 1 and applicable state laws described herein;

c.   That judgment be entered for Plaintiffs and the Class on the first claim awarding injunctive relief;

d.   That judgment be entered for Plaintiffs and the State Subclass members on the second claim for damages, trebled as allowed by law;

e.   That Plaintiffs and the members of the Class and State Subclasses recover their costs of suit, including attorneys' fees and expert fees, as provided by law; and

f.   For such other and further relief as is just and proper under the circumstances.

Dated: September 17, 2015      BLOOD HURST & O'REARDON, LLP
                               TIMOTHY G. BLOOD (149343)
                               THOMAS J. O'REARDON II (247952)
                               PAULA M. ROACH (254142)


                               By:      s/ Timothy G. Blood
                                     TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP

00090125

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

MORGAN & MORGAN, P.C.
PETER SAFIRSTEIN
ROGER SACHAR
28 W. 44th Street, Suite 2001
New York, NY  10036
Tel: 212/564-1637
212/564-1807 (fax)
PSafirstein@MorganSecuritiesLaw.com
RSachar@MorganSecuritiesLaw.com

*Attorneys for Plaintiffs and the Class*

BLOOD HURST & O'REARDON, LLP

24            Case No.
CLASS ACTION COMPLAINT